UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER E. TALAVERA, an individual, et al.,<br><br>          Plaintiffs,<br><br>v.<br><br>GLOBAL PAYMENTS, INC., a Georgia corporation, et al.,<br><br>          Defendants. | Case No.: 21-CV-1585 TWR (AGS)<br><br>**ORDER DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**(ECF No. 3)** |

  Plaintiff Christopher E. Talavera and his company, Turnkey Web Tools, Inc., have moved for a temporary restraining order or a preliminary injunction. (ECF No. 3.) Defendants Global Payments, Inc., Active Network, LLC, and Heartland Payment Systems, LLC, oppose ("Opp'n," ECF No. 8), and Plaintiff has replied. ("Reply," ECF No. 13.) For the reasons set forth below, the Court **DENIES** the motion.

## BACKGROUND

  In January 2001, Plaintiff Christopher Talavera created a computer software program called "SunShop." (ECF No. 4, "Talavera Decl." ¶ 2.) SunShop is software which handles purchases and transactions done on the Internet. (*Id.* ¶ 12.) In 2004, Talavera applied and received a Copyright Registration for the SunShop software. (*Id.* ¶ 4; ECF No.

1, Ex. A.) Only his company, Turnkey Web Tools, Inc., has the right to distribute SunShop. (*Id.* ¶ 5.)

In 2008, Turnkey entered into a limited license agreement with "Blue Bear Software," which has led to the underlying facts of this case. The limited license agreement granted Blue Bear the right to use the SunShop software for one year, subject to annual renewal. (*Id.* ¶ 8.) During this time, BlueBear maintained close ties with Defendant Active Network, LLC, and used email addresses associated with Active Network. (*Id.* ¶ 9.) Around 2008, Active acquired Blue Bear, including "all of its license agreements for software," and continued to provide customers the same software services that Blue Bear provided before the acquisition. (ECF No. 8-2, "Loch Decl." ¶ 8.) Active paid the last license fee to Talavera in 2013, and around September 2017, Active merged with Global Payments, Inc., meaning that Global Payments acquired all of Active's software licenses. (*Id.* ¶¶ 10–11.) After 2013, however, Talavera stopped charging Active's credit card, stopped communicating with Active, and did not terminate, deactivate, or block Active's access and use of the SunShop software. (*Id.* ¶¶ 13–14.) Talavera disputes this, providing copies of three emails that he sent to BlueBear concerning "Customer Invoice," "Invoice Payment Reminder," and "Service Suspension."[1] (ECF No. 13-1 ¶ 11, ECF No. 13, Ex. J.)

Although SunShop has license keys and other technological measures to identify unlicensed use, Talavera discovered the infringement here coincidentally. In June 2021, while donating to his child's school online, he noticed a copy of the SunShop shopping cart software. (*Id.* ¶ 11.) As he was reviewing the school's webstore, he recognized the host website: "activenetwork.com." (*Id.* ¶ 12.) He also discovered other third-party school webstores that used SunShop, which Active Network hosts. (*Id.*) Talavera identified the administrative Login Screen for the websites that Active Network hosts and found out that

---

[1] These emails were sent to the customer on file: "jon.Christopher@ActiveNetwork.com." (ECF No. 13-1, Ex. I.)

they were "virtually identical" to the login screen for the legacy version of SunShop, which was copyrighted. (*Id.* ¶ 14.) Upon further research, Talavera discovered that Defendants' software, which infringes on SunShop, was being used by at least "480 schools and entities." (*Id.* ¶ 16.) Talavera compared the publicly viewable source code (Java Script) for Active Network's webstores and the legacy version of SunShop (used from 2004 until the recent update), and it showed that Defendants had "copied at a minimum, hundreds of lines of [his] original source code" and that the "first four pages of code were virtually identical." (*Id.* ¶ 14; ECF No. 4, Ex. F.) Although Talavera emailed BlueBear requesting payment for "any and all license fees," he did not receive a response. (Talavera Decl. ¶ 15.)

Talavera now moves for an injunction. In particular, Talavera claims that Defendants have "reversed engineered and are using SunShop without any right, license[,] or authority," and the license agreement has "long expired." (*Id.* ¶¶ 17–18.) What is more, Defendants have "removed all attribution, license keys[,] and other technological measures to circumvent unlicensed use" that was built into the software. (*Id.* ¶ 10.)

## LEGAL STANDARD

Under Fed. R. Civ. P. 65, a party may move for a temporary restraining order or a preliminary injunction. The standard for both is the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). To obtain a preliminary injunction, the plaintiff must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). The first factor is the most important, and "[b]ecause it is a threshold inquiry," when a "plaintiff has failed to show the likelihood of success on the merits," the other remaining elements need not be considered. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The Ninth Circuit also applies a "sliding scale approach," where "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance

of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

## ANALYSIS

Talavera seeks to enjoin Defendants from using his SunShop software. The Court addresses whether he has made the necessary threshold showing.

### A. Likelihood of Success on the Merits

In moving for an injunction, Talavera argues that he has shown a likelihood of prevailing on his copyright infringement and Digital Millennium Copyright ("DMCA") claims.

#### 1. Copyright Infringement

To begin, Talavera argues that Defendants's software infringes on the SunShop source code. "To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)). Since a certificate of copyright registration is prima facie evidence of copyright ownership, *see* 17 U.S.C. § 410(c), the burden shifts to the defendant to prove "the invalidity of the plaintiff's copyrights." *Asmodus, Inc. v. Junbiao Ou*, No. EDCV162511JGBDTBX, 2017 WL 2954360, at *11 (C.D. Cal. 2017). As for copying, "a plaintiff may prove this element through circumstantial evidence that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work and (2) there is substantial similarity of the general ideas and expression between the copyrighted work and the defendant's work." *Unicolors*, 853 F.3d at 984–85. "Copyrighted software ordinarily contains both copyrighted and unprotected or functional elements." *Sony Computer Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 599 (9th Cir. 2000). "In determining whether 'copying' has been shown in the context of computer software, 'which ordinarily contains both copyrighted and unprotected or functional elements,' a court determines 'whether the *protectable elements, standing*

*alone,* are substantially similar.'" *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1218 (N.D. Cal. 2012) (emphasis in original). The plaintiff may not rely on "any similarity in expression resulting from unprotectable elements. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (internal quotation marks and citation omitted).

Defendants dispute the validity of Talavera's Copyright Registration Form. Under 37 C.F.R. § 202.20, a party may obtain a copyright registration by submitting copies of their work to the Copyright Office. "If the program is 50 pages or less, the required deposit will be the entire source code," but if the work contains trade secrets, those parts must be "blocked-out," provided that the "blocked-out portions are proportionately less than the material remaining, and the deposit reveals an appreciable amount of original computer code." 37 C.F.R. § 202.20(c)(vii)(A). Here, Defendants argue that since Talavera has not submitted a copy of his deposit to the Copyright Office, it makes it difficult to determine whether "he properly complied with the deposit requirement of Copyright Circular 61," which requires the author to "submit one copy of the first twenty-five pages and last twenty-five pages of the source code for the specific version [the author] want[s] to register." *See* Copyright Circular 61.

That argument, however, has no legal basis. First, the fact that Talavera received a Copyright Registration suggests that he *did* comply, and the Copyright Registration affords him the presumption of validity.[2] *See* 17 U.S.C. § 410(c). Second, Defendants want Talavera to prove compliance by providing the deposit materials that he submitted to the Copyright Office, but there appears to be no such requirement. *See Woodall v. Walt Disney Co.*, No. CV 20-3772-CBM-(EX), 2021 WL 2982305, at *4 (C.D. Cal. 2021) ("Defendants cite no authority requiring a plaintiff to attach all deposit materials registered with the

---

[2] Talavera claims that he created and wrote the computer software called "SunShop" in 2001, and he applied and received a Copyright Registration in 2004. Under 17 U.S.C. § 410(c), because the Copyright Registration was issued within five years of the original work, it is presumptively valid.

federal Copyright Office in order to adequately allege ownership for a copyright claim"). Indeed, Talavera claims that "the original source code (written in PHP)" is "deposited at the Copyright Office, [and] can easily be obtained by Defendants promptly and even on an expedited basis." (ECF No. 13-1 ¶ 3.) The failure to produce the deposit materials does not rebut the presumption of validity afforded by the Copyright Registration.

Defendants also attack the validity of the Copyright Registration by claiming that on Talavera's website, he once stated that the SunShop computer program was "[s]oftware with 98% open source code." (Opp'n at 5; ECF No. 8-4, "Murphy Decl.") According to Defendants, this undermines the validity of the Copyright Registration, where Talavera stated that he was the author of the "entire source code" and that he did not incorporate any preexisting work for SunShop. (Opp'n at 5–6; ECF No. 1, Ex. A.) But that argument is explained away by Talavera's declaration. While conceding that this was "inartful and technically incorrect," Talavera explains that by "open source," he meant that 98 percent of the source code was "not encrypted," and that it could be "configured to the customer's needs." (ECF No. 13-1 ¶ 13.) In contrast, the other 2 percent is "encrypted," meaning that it could not "be easily altered or manipulated." (*Id.*) Talavera maintains that he was the sole author of SunShop and that this original code was "submitted to the Copyright Office." (*Id.*) In light of this declaration, the Internet advertisement posted more than ten years ago (from 2007 to 2010) does not appear enough to overcome the Copyright Registration.

Still, there exists an open question as to whether the Defendants copied Talavera's original work. Talavera argues that Defendants had access to the SunShop software and source code at issue, and that Defendants' software is "nearly identical and substantially similar" to SunShop. (ECF No. 3 at 30.) And to be sure, there exists some evidence to support that claim. As noted above, copyright infringement requires the plaintiff to establish "ownership of a valid copyright and unauthorized copying of *original elements of the protected work*," *Integral Dev. Corp. v. Tolat*, No. C 12-06575 JSW, 2015 WL 674425, at *6 (N.D. Cal. 2015) (citation omitted), and the burden falls on the Defendants to show that "the allegedly copied elements are not protectable expression." *Brocade*

*Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2011 WL 7762998, at *2 (N.D. Cal. 2011).  Relevant here, although Talavera has submitted evidence that places his code side by side with that of the Defendants (ECF No. 4, Ex. F), Defendants maintain that their code does not reflect Talavera's original work.  (Opp'n at 6.)  To that end, Defendants have submitted an expert declaration stating that their code, as reflected in Exhibit F, is "routine source code that would be present in any electronic commerce program that accepted credit cards," and that the "function definitions" in this sample source code shows "common JavaScript idioms that can be found in many other programs that plainly were not written by Mr. Talavera."  (ECF No. 8-1, "Shamos Decl." ¶ 18.)  In his declaration, Talavera concedes that the "JavaScript itself does contain some 'routine material' that can be used in many web based applications," but everything else "is pretty much, line for line, the exact same code."  (ECF No. 13-1 ¶ 14.)  Just because "a few lines of code are similar to something else that could be found on the internet, namely a software that carries the same functional goal," Talavera argues, does not explain "why every other line is nearly an exact match between both examples."  (*Id.*)  Accordingly, Talavera has shown a likelihood of success on the copyright infringement claim.[3]

---

[3] Defendants also argue that the statute of limitations bars the copyright infringement claim.  Under 17 U.S.C. § 507(b), copyright infringement claims are subject to a three-year statute of limitations.  "[A] copyright infringement claim accrues—and the statute of limitations begins to run—when a party discovers, or reasonably should have discovered, the alleged infringement."  *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020) (citation omitted).  Here, Talavera claims that he discovered the infringing activity in June 2021, so his claims are not time-barred.  (Talavera Decl. ¶ 11.)  In response, Defendants claim that it is "inconceivable that Plaintiffs did not know of [Defendants'] continued use of the SunShop computer program in the over eight years since Plaintiffs' last received license fees" since Talavera stated that he and his company "routinely monitor the Internet to search for any unauthorized users of [their] software programs."  (Opp'n at 16.)  But as Talavera explains, it is impossible for him and his company to monitor "past and current licensees manually to ensure that the installations are being properly used" and that the "encrypted code has not been reverse-engineered as in this instance."  (ECF No. 13-1 ¶ 16.)  Especially here, Talavera argues, the infringement was difficult to detect because Defendants found a way to bypass the security methods by removing "all attribution, license keys," and employing "other technological measures to circumvent unlicensed use," which enabled them to escape detection.  (Talavera Decl. ¶ 10.)

### 2. Digital Millennium Copyright Act ("DMCA")

Furthermore, Talavera argues that he can succeed on his DMCA claim. Under 17 U.S.C. § 1201(a)(1)(A), Talavera must show that "(1) [his] software included a technological measure that effectively controls access, (2) [Defendants] circumvented that technological measure, and (3) [Talavera's] software that [Defendants] accessed is a work protected under the Copyright Act." *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1072 (S.D. Cal. 2019). Under 17 U.S.C. § 1201(a)(1)(A), "[n]o person shall circumvent a technological measure that effectively controls access to a [copyrighted] work," and circumvention is defined as "decrypt[ing] an encrypted work ... without the authority of the copyright owner." *Id.* § 1201(a)(3)(A). Under Section 1201(a)(3)(A), Defendants may not be liable for circumvention if the copyright owner, like Talavera, authorized it to circumvent an access control measure; authorization to access the work is not a defense. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 863 (9th Cir. 2017).

Defendants do not meaningfully contest the DMCA claim, arguing that "the copyright infringement claim forms the basis for the instant request for injunctive relief." (Opp'n at 2 n. 1.) At best, to justify their circumvention, Defendants rely on a license agreement between Talavera and Blue Bear in 2008, which provided the licensee the right to "modify[] the Software source code to better fit your company's needs." (ECF No. 4, Ex. D.) But even if that were the case, modification and circumvention are different things, and "[e]ven 'lawful purchasers' must establish that they had specific 'authorization to circumvent' in order to avoid DMCA liability." *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1073 (S.D. Cal. 2019) (citing *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 863 (9th Cir. 2017)). So, whether Blue Bear once had a valid License Agreement to use SunShop is beside the point. The same reasoning also applies to Defendants' claim that Talavera never terminated the License Agreement, and that his emails suggest that this dispute is about license fees, not copyright infringement. (Opp'n at 17.) Whether Talavera demanded license fees does not suggest anything about whether

Defendants circumvented SunShop's access controls, which is alleged here. And as noted above, Talavera has produced evidence—*i.e.*, his emails—to show that he terminated the License Agreement with Blue Bear. (Reply, Ex. I.) Here, Plaintiff has shown a likelihood of success on the merits.

### B. Irreparable Injury

Despite his likelihood of success on the merits, Plaintiff has failed to show irreparable injury. To begin, Talavera argues that in copyright law, a successful showing on the merits warrants a presumption of irreparable injury. (ECF No. 3 at 32.) That is no longer good law. *See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011) ("[T]his circuit's long-standing practice of presuming irreparable harm upon the showing of likelihood of success on the merits in a copyright infringement case is no longer good law."). The same is true for his DMCA claim, where irreparable harm may be established by "*evidence* that circumvention is undermining the copyright owner's negotiating position, damaging goodwill with licensees, threatening the copyright owner's business model, risking the copyright owner's market share, causing reputational harm to the copyright owner or its works, and/or enabling third parties to infringe the owner's copyrights." *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1074 (S.D. Cal. 2019 (emphasis added).

Talavera fails to make the required showing. In his motion, Talavera describes his irreparable injuries as "harm to reputation; loss of customers; loss of goodwill; and dilution and complete diminution of value of its rights/confidential information." (ECF No. 3 at 32.) Talavera further states that, absent an injunction, he would suffer from "contributed misattribution of such software by Defendants," the "purported and albeit false grant of authority to third parties who are not in privity . . . to use Plaintiff's software," "public confusion," and "lost sales and the lack of any real customer support for such software." (*Id.* at 33.) But all the harms alleged lack concrete, supporting evidence. First, Talavera fails to produce any evidence showing the loss of goodwill, or the lost sales and customer support for his software. *See Nelson Levine De Luca & Hamilton, LLC v. Lewis Brisbois*

*Bisgaard & Smith, LLP*, No. CV 14-3994 FMO (SHX), 2014 WL 12560690, at *4 (C.D. Cal. 2014) ("Plaintiff 'fails to provide even a single piece of evidence suggesting that they have lost good will from any of their still current clients.'"); *see also BrightView Landscapes, LLC v. Stowell*, No. CV178317FMOGJSX, 2017 WL 10511569, at *3 (C.D. Cal. 2017) (Plaintiff has offered "no evidence of any loss of goodwill, nor has it offered evidence that additional customers will imminently cancel their contracts."). And while "loss of control over business reputation and damage to goodwill could constitute irreparable harm," the moving party must produce *evidence* as opposed to "platitudes." *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). Conclusory allegations do not suffice. *See adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) (stating that "'[e]vidence of loss of control over business reputation and damage to goodwill [can] constitute irreparable harm,' so long as there is *concrete evidence* in the record of those things.") (emphasis added); *see also BrightView Landscapes, LLC*, 2017 WL 10511569, at *3 ("Such conclusory allegations regarding the loss of goodwill are insufficient."). In his declaration, Talavera claims that Defendants' actions will "more than likely" harm his company's reputation and goodwill, but that is conclusory and speculative. (Talavera Decl. ¶ 20.) Finally, Talavera cites *Synopsys, Inc. v. InnoGrit, Corp.*, No. 19-CV-02082-LHK, 2019 WL 2617091, at *3 (N.D. Cal. 2019) to argue that circumvention would cause loss of goodwill for paying customers, who would face a price disadvantage compared to competitors who "circumvent the company's controls and receive the software for free," causing a "downward pricing pressure, as the customer's paying customers insist on lower prices to compete with nonpaying pirates." (Reply at 7.) But again, Talavera provides no evidence of this loss of goodwill or the "downward pricing pressure" that may result. *See Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011) ("Moreover, notwithstanding Perfect 10's theory of irreparable harm, it failed to submit a statement from even a single former subscriber who ceased paying for Perfect 10's service because of the content freely available via Google."). Talavera maintains that unfair competition damages and economic damages are difficult to

10

21-CV-1585 TWR (AGS)

ascertain or quantify (ECF No. 3 at 22), but that is not the question. Rather, the question is whether those harms would materialize in the first place, and here, Talavera has not made that showing. Thus, the second prong weighs against the granting of a preliminary injunction. *See Perfect 10*, 653 F.3d 976, 982 (9th Cir. 2011) ("Nor has Perfect 10 provided any evidence in support of its claim that Google's alleged violation of the rights of publicity assigned to Perfect 10 by its models would cause it irreparable harm.").

### C. Balance of Equities and the Public Interest

Finally, the parties disagree as to the balance of equities and the public interest, but the Court need not resolve this dispute. Despite some evidence that suggests a likelihood of success on the merits, Talavera has failed to show that he would suffer an irreparable injury, and as a result, an injunction is not warranted. *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2011 WL 7762998, at *3 (N.D. Cal. Aug. 16, 2011) ("[G]iven the fact that Brocade has not met its burden to show irreparable harm, the equities and the public interest do not favor an injunction."). The failure to show irreparable harm is enough to deny a request for an injunction. *See Perfect 10*, 653 F.3d at 982 (finding that the district court did not abuse its discretion for denying preliminary injunctive relief because the plaintiff failed to show irreparable harm).

### CONCLUSION

For the reasons stated above, the Court **DENIES** the motion for a temporary restraining order and preliminary injunction.

**IT IS SO ORDERED.**

Dated: November 16, 2021

_____
Honorable Todd W. Robinson
United States District Judge