UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER E. TALAVERA, an individual formerly doing business as TURNKEY WEB TOOLS; and TURNKEY WEB TOOLS, INC., a California corporation,<br><br>                              Plaintiffs,<br><br>v.<br><br>GLOBAL PAYMENTS, INC., a Georgia corporation; ACTIVE NETWORK, LLC, a Delaware limited liability company; HEARTLAND PAYMENT SYSTEMS, LLC, a Delaware limited liability company; and DOES 1 through 229, inclusive,<br><br>                              Defendants. | Case No.:  21-CV-1585 TWR (MSB)<br><br>**ORDER (1) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND (2) GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>(ECF Nos. 55, 60) |

Presently before the Court are the Cross-Motions for summary judgment filed by Plaintiffs Christopher E. Talavera and Turnkey Web Tools, Inc. (ECF No. 60, "Pls.' MSJ") and Defendants Active Network, LLC; Global Payments, Inc.; and Heartland Payment

/ / /

/ / /

/ / /

1

Systems, LLC[1] (ECF No. 55; ECF No. 55-1, "Defs.' MSJ").  The Cross-Motions are fully briefed, (*see* ECF Nos. 55, 60–63), and the Court held a hearing on March 2, 2023, (*see* ECF No. 66).  Having carefully considered the Parties' arguments, the record, and the applicable law, the Court **DENIES** Plaintiffs' Motion and **GRANTS** Defendants' Motion.

## BACKGROUND

## I.   Facts

This action arises out of a dispute over a software program called "SunShop."  (ECF No. 63, "Jt. Stmt." ¶ 3.)  In 2001, Plaintiff Christopher Talavera created the source code for the SunShop software program.  (*Id.*)  From 2002 to 2003 Talavera operated under the business name "Turnkey Web Tools, Inc." ("TWT").  (ECF No. 16, "FAC" ¶ 4.)[2]  In June 2003, Talavera incorporated and registered TWT to do business in California.  (Jt. Stmt. ¶ 2.)  Talavera is the President of TWT.  (*Id.* ¶ 1.)

In February 2004, Talavera obtained a copyright registration certificate for the SunShop software and underlying source code (Copyright No. TX 5-896-387).  (*Id.* ¶ 5; *see also* FAC ¶ 2.)   And in September 2021, Talavera obtained a second copyright registration certificate for a revised version of the SunShop software and source code (Copyright No. TX 9-010-501).  (Jt. Stmt. ¶ 6; FAC ¶ 3.)  Although TWT does not own these copyrights, (Jt. Stmt. ¶ 8), since its incorporation, TWT has purportedly been authorized by Talavera to act as the exclusive copyright and license administrator for

---

[1]     Doe Defendants 1 through 229 have not been identified or served, and thus do not join in Defendants' Motion for Summary Judgment.  Plaintiffs' claims against the Doe Defendants are discussed further in Section II.I.

[2]     In their Motion for Summary Judgment, Defendants rely on various facts within the First Amended Complaint ("FAC") on the basis that it was verified under oath.  (Defs.' MSJ at 5 n.1.)  Yet in their later briefing, Defendants contend that the FAC should not be considered because it is unverified.  (ECF No. 61 at 8.)  Although the copy of FAC submitted with Plaintiffs' Cross-Motion does not contain the verification page, (ECF No. 60-1, "Pls.' Ex. A"), it is substantively identical to the FAC on the Docket, which has been verified under oath by Plaintiff Christopher Talavera on behalf of himself and TWT, (*see* ECF No. 16-1).  Therefore, the Court will consider the verified FAC as summary judgment evidence.

Due to the anemic Joint Statement of Facts submitted by the Parties, the Court has been forced to scour the Parties' briefing to identify those facts within the FAC which have been adopted by both sides.  Those undisputed facts are incorporated into the Background Section of this Order.

SunShop, (FAC ¶ 9; *see also* ECF No. 61 at 29).  This authorization is not memorialized in a written agreement.  (Jt. Stmt. ¶ 9.)

From approximately 2007, (Defs.' MSJ at 6; Pls.' MSJ at 8), to 2012,[3] Blue Bear Corporation ("Blue Bear") paid Plaintiffs to license the SunShop software program to offer "shopping cart services" to school districts selling merchandise, event tickets, and other online goods and services, (FAC ¶¶ 21, 29).   In 2008, Defendant Active Network, LLC ("Active") wholly acquired Blue Bear, including all license agreements.  (ECF No. 8-2, "Loch Decl." ¶ 12.)[4]  In 2017, Active merged with Defendant Global Payments, Inc. ("GPI").  (*Id*. ¶ 11.)  Now, GPI wholly owns Active as well as Defendant Heartland Payment Systems, LLC ("Heartland").  (*Id*. ¶ 3.)

In 2013, Active stopped making licensing fee payments to Plaintiffs for the SunShop software, (*id*. ¶ 13), but Active has continued to use the software through the present day, (*id*. ¶ 14; *see also* ECF No. 8 at 10).

## II.   Procedural History

Plaintiffs initiated this action on September 8, 2021, (*see* ECF No. 1), and filed a First Amended Complaint on November 9, 2021, (*see* ECF No. 16).  The First Amended Complaint brings eight claims: (1) copyright infringement; (2) induced copyright infringement; (3) violation of the Digital Millenium Copyright Act ("DMCA") § 1201(a)(2) (Circumvention); (4) violation of the DMCA § 1202 (False/Removed Copyright Management Information); (5) false designation of origin; (6) trade dress infringement;

---

[3]    Although it is undisputed that Defendants last paid for use of the license through 2012, the evidence submitted by Plaintiffs indicates that the license in fact expired in 2013, (*see* ECF No. 60-1, "Pls.' Ex. J"), purportedly due to a promotion providing Defendants with an additional year of use, (*see* Pls.' MSJ at 10).  Plaintiffs clarified this issue at the Motion Hearing and Defendants did not present any evidence to the contrary.  Thus, the Court accepts it as true.

[4]    Mr. Loch is the Vice President and General Manager of School Solutions at Defendant Active. Plaintiffs have submitted the Loch Declaration in its entirety in support of their Motion, (ECF No. 60-1, "Pls.' Ex. D"), and Defendants have incorporated various facts from the Loch Declaration into their Motion, (*see generally* Defs.' MSJ), and submitted the Declaration in support of a prior filing, (*see* ECF No 8-2).  Accordingly, the Court incorporates undisputed facts from the Declaration into the Background Section of this Order.

(7) unfair competition; and (8) unjust enrichment.  (*See generally* FAC.)  Defendants answered on December 20, 2021, (*see* ECF No. 22), and the Parties completed discovery approximately one year later, (*see* ECF No. 53).

On December 19, 2022, Defendants filed a Motion for Partial Summary Judgment on Plaintiffs' Fifth, Sixth, and Eighth Claims for Relief.  (*See* Defs.' MSJ.)  At Plaintiffs' request, (*see* ECF No. 57), the Court set a consolidated briefing schedule allowing Plaintiffs to file a Cross-Motion for Summary Judgment, (ECF No. 59).  On January 19, 2023, Plaintiffs filed a consolidated Cross-Motion and Opposition to Defendants' Motion. (ECF No. 60.)  Defendants then filed a consolidated Opposition to the Cross-Motion and Reply in support of their affirmative Motion, (ECF No. 61), and Plaintiffs filed a Reply in support of their Cross-Motion, (ECF No. 62).  The Parties also filed a Joint Statement of Undisputed Facts.  (ECF No. 63.)  The Court held a hearing on the Cross-Motions on March 2, 2023.  (*See* ECF No. 66.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment as to a claim or defense or part of a claim or defense.  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Although materiality is determined by substantive law, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986).  A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  When considering the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The moving party may meet this burden by "identifying those portions of 'the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *see also Anderson*, 477 U.S. at 248. Accordingly, the nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256.

Where, as here, the parties have filed cross-motions, the court considers each motion "separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *See SEC v. Feng*, 935 F.3d 721, 728 (9th Cir. 2019). The Court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

## ANALYSIS

### I. Evidentiary Objections

As a preliminary matter, Defendants raise several objections to the evidence submitted in support of Plaintiffs' Cross-Motion for Summary Judgment, (*see* ECF No. 61-6), and Reply in Support of that Cross-Motion, (*see* ECF No. 64). The Court addresses

each set of objections in turn.

### A.    Defendants' Objections to Plaintiffs' Cross-Motion

Pursuant to Section III.B.4 of the undersigned's Standing Order for Civil Cases, "[o]bjections to evidence submitted in support of a motion must be contained within the opposition brief" and "[n]o separate statements of objections will be allowed." *See* Standing Order for Civil Cases § III.B.4.   Here, Defendants filed their evidentiary objections to Plaintiffs' Cross-Motion in a separate document, (*see* ECF No. 61-1), rather than in their consolidated Opposition brief, (*see* ECF No. 61).   Defendants' separate statement of objections is ten pages in length, (*see generally* ECF No. 61-6), on top of Defendants' twenty-six-page briefing, (*see generally* ECF No. 61).   Although Defendants' separate statement of objections violates the undersigned's Standing Order for Civil Cases, in this limited instance the Court will consider Defendants' objections on the merits.   The Court, however, cautions Defendants that further violations of the Standing Order will not be excused.

### 1.    Exhibit A

In support of their Cross-Motion, Plaintiffs filed Exhibit A, (ECF No. 60-1, "Pls.' Ex. A"), along with a Declaration from Plaintiffs' counsel Mandana Jafarinejad (the "Jafarinejad Declaration"), which identifies the Exhibit as a "true and correct copy of the First Amended Complaint [ECF No. 16], filed on November 9, 2021," (ECF No. 60-2, "Jafarinejad Decl." at 2).[5]   Defendants object to the Exhibit on the grounds that it lacks foundation, lacks authentication, and constitutes hearsay, arguing Jafarinejad failed to "properly authenticate th[e] document or lay any foundation for her personal knowledge." (ECF No. 61-6 at 2.)   Furthermore, Defendants argue, the First Amended Complaint "is

---

[5]    To avoid ambiguity, citations to the Parties' filings refer to the CM/ECF pagination electronically stamped at the top of each page.   Plaintiffs' Exhibits A through J, however, are filed as a single document, and many pages were previously electronically stamped by CM/ECF.   (*See* ECF No. 60-1.)   Thus, when a new CM/ECF stamp was superimposed on the prior one, the pagination became illegible.   Accordingly, when referencing Plaintiffs' Exhibits A through J, the Court refers only to the Exhibit's name and, when available, the pagination at the bottom of each page.

not verified" and several allegations are based on "information and belief." (*Id.*)

As discussed previously, *see supra* note 2, Plaintiff Christopher Talavera verified the First Amended Complaint under oath on behalf of himself and Plaintiff TWT, (*see* ECF No. 16-1). Once sworn, the First Amended Complaint becomes equivalent to an authenticated affidavit. *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) ("A verified complaint may be used as an opposing affidavit under Rule 56.") "Rule 56 permits the use of affidavits in evaluating a motion for summary judgment. While the facts underlying the affidavit must be of a type that would be admissible as evidence, the affidavit itself does not have to be in a form that would be admissible at trial." *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (citing Fed. R. Civ. P. 56(e) and *Celotex*, 477 U.S. at 324).

Accordingly, although a verified complaint is hearsay, it may be considered on a motion for summary judgment if the declarant could present the evidence within it in a non-hearsay form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003). Here, Mr. Talavera could present the evidence in the sworn First Amended Complaint through his direct testimony at trial. And Defendants have failed to identify any specific second-level hearsay statements within the First Amended Complaint that could not be reduced to an admissible form through direct testimony. (*See* ECF No. 61-6.)

Still, a verified complaint may only be considered under Rule 56 if it is based on personal knowledge rather than information and belief. *See Schroeder*, 55 F.3d at 460; *cf. Columbia Pictures Indus., Inc. v. Pro Real Est. Invs., Inc.,* 944 F.2d 1525, 1529 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993) (declining to consider an affidavit under Rule 56 because it was based on information and belief, not personal knowledge). Accordingly, the Court **SUSTAINS** Defendants' objections to any statements based on information and belief because Mr. Talavera lacks the personal knowledge to testify to such information at trial. *See* Fed. R. Evid. 603. However, the Court **OVERRULES** Defendants' objections to the remainder of Exhibit A, the First Amended Complaint.

/ / /

### 2.   *Exhibits B and C*

Plaintiffs filed Exhibits B, (ECF No. 60-1, "Pls.' Ex. B"), and C, (ECF No. 60-1, "Pls.' Ex. C"), along with the Jafarinejad Declaration, which identifies Exhibit B as a "true and correct copy of Plaintiff Talavera's Copyright Registration No. TX 5-986-387, registered on February 20, 2004," and identifies Exhibit C as a "true and correct copy of Plaintiff Talavera's Copyright Registration No. TX 9-010-501, registered on September 8, 2021," (Jafarinejad Decl. at 2).  Defendants object to the Copyright Registrations on the basis that they lack foundation, lack authentication, and constitute hearsay, arguing that Jafarinejad failed to "properly authenticate th[e] document[s] or lay any foundation for her personal knowledge."  (ECF No. 61-6 at 2–3.)

Both Exhibits are Copyright Registrations, which constitute sealed, signed domestic public documents; therefore, they are self-authenticating, and no further foundation or authentication is needed.  *See* Fed. R. Evid. 902(a).  The Exhibits also constitute records of documents that affect an interest in property, Fed. R. Evid. 803(14), statements in documents that affect an interest in property, Fed. R. Evid. 803(15), and public records, Fed. R. Evid. 803(8).  Therefore, the Copyright Registrations could be presented at trial as exceptions to hearsay.  For the foregoing reasons, the Court **OVERRULES** Defendants' objections to Exhibits B and C, the Copyright Registrations.

### 3.   *Exhibit E*

Plaintiffs filed Exhibit E, (ECF No. 60-1, "Pls.' Ex. E"), along with the Jafarinejad Declaration, which identifies the Exhibit as a "true and correct copy of Defendants' Opposition to Plaintiffs 'Motion for T.R.O. and Preliminary Injunction' [ECF No. 8], filed October 1, 2021," (Jafarinejad Decl. at 2).  Defendants object to the Exhibit on the basis that it lacks foundation, lacks authentication, and constitutes hearsay, arguing "[t]he contents of Exhibit E are attorney argument and there are no statements made under oath." (ECF No. 61-6 at 3.)  Unauthenticated documents may not be considered in a motion for summary judgment.  *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (collecting 9th Circuit cases).  Here, Jafarinejad has properly authenticated and laid

foundation for Defendants' Opposition to the T.R.O. as a document within her personal knowledge as an attorney representing Plaintiff.  *See* Fed. R. Evid. 901(b)(1).

Still, the filing is hearsay and therefore may only be considered if the "underlying evidence [within it] could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).  Defendants are correct that Plaintiff would not be able to present defense attorneys' prior arguments in an admissible form at trial.  But to the extent that Defendants' prior filing contains purely factual assertions, it could be reduced to an admissible form at trial through percipient witness testimony.  Specifically, the "Statement of Facts" Section in Exhibit E relies on the following underlying material: a Declaration from Jeremy Loch; a Declaration from Philip Laffey; Declarations from Mr. Talavera; a Declaration from Mr. Murphey; and a Declaration from Dr. Michael I. Shamos.  (*See* Pls.' Ex. E at 3–6.) Therefore, the assertions in the Statement of Facts Section could be reduced to an admissible, non-hearsay form at trial through direct testimony from the aforementioned individuals.  Accordingly, the Court **OVERRULES** Defendants' objection to the Statement of Facts in Exhibit E (3:22–6:27) and the portion of the Jafarinejad Declaration discussing the Exhibit (1:21–23) but **SUSTAINS** Defendants' objection to the remainder of Exhibit E as inadmissible hearsay.

### 4.   *Exhibit F*

Plaintiffs filed Exhibit F, (ECF No. 60-1, "Pls.' Ex. F"), along with the Jafarinejad Declaration, which identifies the Exhibit as a "true and correct copy of the Declaration of Christopher Talavera in Reply to Opposition to Plaintiffs' Motion for T.R.O. and Preliminary Injunction [ECF No. 13-1], filed on October 8, 2021," (Jafarinejad Decl. at 2). Defendants raise several global objections to the Declaration as well as several specific objections to statements within the Declaration.  (*See* ECF No. 61-6 at 4–11.)

First, Defendants object to the Declaration as a whole on the basis that it lacks foundation, lacks authentication, and constitutes hearsay.  (ECF No. 61-6 at 4.)  The Jafarinejad Declaration does, however, properly authenticate and lay the foundation for

Mr. Talavera's Declaration.  *See* Fed. R. Evid. 901(b)(1).  As for Defendants' hearsay objection, the Court finds that the Declaration could be reduced to an admissible form at trial through the direct testimony of Mr. Talavera, meaning the Court can consider the Declaration at summary judgment.  *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).  Finally, Defendants object that "the Declaration is not executed under penalty of perjury." (ECF No. 61-6 at 5.)  The Declaration does, however, begin by stating "I declare under penalty of perjury pursuant to the laws of the United States and the State of California that the following is true," and it is dated and signed.  (*See generally* Pls.' Ex. F.)  Therefore, the declaration is sworn.  *See* 28 U.S.C. § 1746.  Accordingly, the Court **OVERRULES** Defendants' global objections to Exhibit F.

Defendants also raise several objections to specific statements within the Declaration. (ECF No. 61-6 at 5–11 (Objection 8–27).)  Among these are hearsay, lack of foundation, improper opinion, improper legal conclusion, argumentative, and best evidence. (*See id.*)  The Court addresses only the meritorious objections in detail.  First, Defendants object to various portions of the Declaration that refer to the contents of Exhibit E—Defendants' Opposition to Plaintiffs' Motion for T.R.O. and Preliminary Injunction. (*See id.* at 7 (Objection 15) & 9 (Objection 22); *see also* Pls.' Ex. F at 3 (Paragraph 6) & 5 (Paragraph 12).)  Defendants object that references to the contents of Exhibit E constitute inadmissible hearsay and Talavera's commentary on Exhibit E constitutes improper legal conclusions. (*See* ECF No. 61-6 at 7 (Objection 15) & 9 (Objection 22).)

For the most part, the Court agrees.  The attorney argument within Exhibit E cannot be reduced to an admissible non-hearsay form at trial, *see supra* Section I.A.3, and Mr. Talavera's personal legal opinions would be improper, *see* Fed. R. Evid. 701.  The Court therefore **SUSTAINS** Objection 15 in whole, (*see* ECF No. 61-6 at 7), and will not consider paragraph six of Exhibit F, (*see* Pls.' Ex. F at 3).  Additionally, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** Objection 22, (*see* ECF No. 61-6 at 9), and will consider only the last two sentences of paragraph twelve, (*see* Pls.' Ex. F at 3 ("The notion that my registration is invalid is completely false.  As I stated, I wrote SunShop as an

original work.")).   The Court **OVERRULES** all other objections to Exhibit F, the Declaration.

### 5. *Exhibits G and H*

Plaintiffs filed Exhibit G, (ECF No. 60-1, "Pls.' Ex. G"), and Exhibit H, (ECF No. 60-1, "Pls.' Ex. H"), along with the Jafarinejad Declaration, which identifies Exhibit G as a "true and correct copy of an email from Eric Coffman, dated August 12, 2013," and Exhibit H as a "true and correct copy of a comparison of the libsecure.php file that was decrypted and attached to the email from Eric Coffman, dated August 12, 2013," (Jafarinejad Decl. at 3).

Defendants object to Exhibit G on the basis that it lacks foundation, lacks authentication, and is hearsay, claiming Jafarinejad "has no personal knowledge regarding the email or its contents, and was not a sender or recipient of the email." (ECF No. 61-6 at 3)   Similarly, Defendants object to Exhibit H on the basis that it lacks foundation and authentication, is hearsay and improper opinion, and assumes facts not in evidence. (*Id.* at 3–4; *see also* ECF No. 61 at 24 (objecting that Exhibit H is unauthenticated, unsworn, hearsay, and offers an expert opinion without qualification).)   Specifically, Defendants argue Jafarinejad "has no personal knowledge regarding the email, its contents, or any attachment thereto, and was not a sender or recipient of the email.  Declarant fails to lay any foundation as to her expertise necessary to testify regarding code comparison or decryption and fails to provide any foundation as to the source or method of comparison." (*See* ECF No. 61-6 at 4.)

In response to Defendants' foundation and authentication objections, Plaintiffs assert that "Exhibits G and H[] were produced in discovery and therefore are admissible by authentication by production." (*See* ECF No. 62 at 9.)   "Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'"   *Orr*, 285 F.3d at 773 (footnotes omitted).   The Ninth Circuit has held that documents produced by a party in discovery can be deemed authentic when offered by the party-opponent if there are

sufficient indicia of authenticity on the face of the document and the party-opponent does not contest the document's authenticity. *See Maljack Prods., Inc. v. GoodTimes Home Video Corp*., 81 F.3d 881, 889 n.12 (9th Cir. 1996); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd*., 454 F. Supp. 2d 966, 972 (C.D. Cal. 2006) ("Authentication can be accomplished by . . . production of the items at issue in response to a discovery request."). A document cannot be authenticated by way of production if the proponent "has not identified who produced [it]" and the opposing party "has not admitted to having produced [it]." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 777 n.21 (9th Cir. 2002).

Here, Jafarinejad's Declaration identifies Exhibit G as an email from Eric Coffman, who the Court gleans is one of Active Network's employees, (*see generally* Pls.' Ex. G (Coffman, signing his email "Software Engineer" with "Active Network")), and Exhibit H as a "libsecure.php file" purportedly attached to that email, (*see* Jafarinejad Decl. at 3). Jafarinejad fails to state that Exhibits G and H were produced by Defendants in discovery; however, in a subsequently filed Declaration, Mr. Talavera asserts that the Exhibits were "obtained throughout the discovery process and w[ere] produced by Defendants." (ECF No. 62-1 at 2.) Although it is typically the attorney's role to certify that an exhibit was produced by the opposing party in discovery, no case law explicitly prevents their client from doing so themself. *See Orr*, 285 F.3d at 777 n.20 (citing *Maljack* for the proposition that "documents produced by a party in discovery [a]re deemed authentic when offered by the *party-opponent*" (emphasis added)).

Because Plaintiffs have sufficiently identified the Exhibits as having been produced by Defendants in discovery, the Court now considers whether there are sufficient indicia of reliability on the face of each Exhibit. As for Exhibit G, the email chain, there is sufficient indicia that it was produced by Defendants in discovery. *See In re Homestore.com, Inc. Sec. Litig*., 347 F. Supp. 2d 769, 781 (C.D. Cal. 2004) ("Although none of these [emails] have affidavits from the actual authors laying the foundation that the emails are what they purport to be, these documents are deemed authentic because Plaintiff identified the documents as being produced by parties in discovery."). Each page

of Exhibit G contains the word "confidential" in the bottom lefthand corner of the page and the word "ACTIVE" followed by an identification number in the bottom righthand corner. (*See generally* Pls.' Ex. G.)  *See also Barefield v. Bd. of Trustees of CA State Univ., Bakersfield*, 500 F. Supp. 2d 1244, 1258 (E.D. Cal. 2007) (identifying bates stamps and the opposing party's letterhead as sufficient independent indicia of authenticity). Additionally, Defendants do not appear to contest the assertion that they produced the Exhibit. *See Metro-Goldwyn-Mayer Studios, Inc.*, 454 F. Supp. 2d at 972 (C.D. Cal. 2006) (explaining that the opposing party must "specifically deny the authenticity of the documents," not simply "mount[] an evidentiary objection").  Accordingly, the Court finds Exhibit G sufficiently authenticated as a document produced by a party-opponent in discovery.  For the same reason, it is admissible as non-hearsay.  *See In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d at 781 ("[E]mails written by a party are admissions of a party opponent and admissible as non-hearsay under Fed. R. Evid. 801(d)(2).").

Exhibit H, however, does not have the same indicia of authenticity.  The document does not contain the same markings as Exhibit G.  Additionally, it is unclear where Exhibit H, the libsecure.php file, originated.  Talavera claims that the file was attached to an email from Jon Christopher to Eric Coffman, (*see* ECF No. 62 at 2–3)—an email which has not been submitted to the Court—whereas the Jafarinejad Declaration claims that the file was attached to an "email *from* Eric Coffman," which does not include Jon Christopher, (*see* ECF No. 60-2 at 3 (emphasis added); *see also* Pls.' Ex. G).

Finally, even if a portion of Exhibit H was produced by Defendants in discovery, by Plaintiffs' own admission, the document has been altered since then.  The Exhibit is prefaced by an explanation written by Mr. Talavera.  (*See* Pls.' Ex. H at 1; ECF No. 62-1 at 2 ("I [Christopher Talavera] personally noted the comparisons between the libsecure.php files . . . .").)  And the remainder of the Exhibit is a purported comparison of Defendants' "version of the libsecure.php file" and Plaintiffs' "original SunShop libsecure.php file." (Pls.' Ex. H at 1; *see also* ECF No. 62-1 at 1, 2.)  Although Defendants may have produced their own libsecure.php file in discovery, there is no reason to believe that they would have

produced Plaintiffs' file.  This information indicates that Defendants did not produce Exhibit H, in its entirety, during discovery.  Consequently, Exhibit H is not admissible through the "authentication by production" method.

Assuming Exhibit H was created by Talavera, the document could have been authenticated through personal knowledge if it had been "attached to an affidavit that [met] the requirements of Fed. R. Civ. P. 56(a)."  *See Orr*, 285 F.3d at 778 (quoting *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)); 31 Wright & Gold, Federal Practice & Procedure: Evidence § 7106, 43 (2000) ("A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, used it, or saw others do so.") Although Mr. Talavera provided a sworn declaration akin to an affidavit which claimed personal knowledge of Exhibit H, the Exhibit itself was not attached to that Declaration. (ECF No. 62-1.)  Rather, the Exhibit was attached to the Jafarinejad Declaration, which was filed several weeks earlier.  (*See* ECF No. 60-1; *see also* ECF No. 62-1 at 2 (Mr. Talavera, explaining that Exhibit H was "[p]reviously attached to Plaintiffs' Motion for Summary Judgment").)  Accordingly, Plaintiffs have not properly authenticated Exhibit H and it cannot be considered on summary judgment.

Moreover, Defendants object that Exhibit H is inadmissible hearsay and Plaintiffs have not identified any exemption or exception under Rules 801, 803, 804 or 807.  Because Plaintiffs have not properly authenticated Exhibit H or responded to Defendants' hearsay objections, the Court **SUSTAINS** Defendants' objections to Exhibit H and will not consider the Exhibit (ECF No. 60-1 at 99–155) when ruling on the Parties' Cross-Motions for Summary Judgment.  Conversely, the Court **OVERRULES** Defendants' objections to Exhibit G.

### B.    *Defendants' Objections to Plaintiffs' Reply in Support of Cross-Motion*

Defendants also object to the evidence submitted in support of Plaintiffs' Reply brief.  (*See* ECF No. 64.)  Although Section III.B.4 of the undersigned's Standing Order for Civil Cases states that, "[o]bjections to evidence submitted in support of a motion must be contained within the opposition brief" and that "[n]o separate statements of objections

will be allowed," (*see* Standing Order for Civil Cases § III.B.4), the Court recognizes that the only vehicle through which Defendants could object to the Reply brief was a separate statement of objections, (*see generally* ECF No. 59).  And "where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (quoting *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)).  The Court will therefore consider Defendants' evidentiary objections to Plaintiffs' Reply brief as well as Plaintiffs' responses.[6]

First, Defendants appear to raise a general objection that any evidence submitted with a reply brief cannot be considered by the Court.  (*See* ECF No. 64 at 2.)  Yet the only case Defendants cite for this proposition is *Provenz*, in which the Ninth Circuit held that a party can submit new evidence in a reply brief so long as the opposing party is afforded "an opportunity to respond."  *See* 102 F.3d at 1483.  Defendants have received an opportunity to respond.  Therefore, the Court **OVERRULES** the objection.

Defendants also raise several objections to portions of a Declaration submitted in support of Plaintiffs' Reply brief.  Specifically, Defendants object that portions of Mr. Talavera's Declaration (ECF No. 62-1) contain impermissible "opinion and non-lay [witness] testimony."  (*See* ECF No. 64 at 2.)  Defendants argue that "Mr. Talavera was not properly identified as an expert by Plaintiffs, denying Defendants[] the opportunity to depose Talavera on his analysis and qualification to provide such testimony."  (*See id*.)  Federal Rule of Civil Procedure 26 requires parties to disclose the identity of any witness who may be used to present expert testimony at trial.  *See* Fed. R. Civ. P. 26(a)(2) (referring to testimony under Federal Rule of Evidence 702, 703, or 705).  According to Defendants,

---

[6]    The Court, however, cautions the Parties that "[s]urreplies and notices of supplemental authority may not be filed without leave of Court, unless there is a subsequent change in binding law that is directly on point."  (*See* Standing Order for Civil Cases § III.B.5.)  Here, Defendants filed their Objections (ECF No. 64) and Plaintiffs filed their responses to those Objections (ECF No. 65) without seeking leave of the Court.

21-CV-1585 TWR (MSB)

Plaintiffs did not identify any expert witnesses by the Court's deadline.  (*See* ECF No. 64 at 2; *see also* ECF No. 48 (setting August 22, 2022 as the deadline for expert designations and disclosures).)

Therefore, according to Defendants, paragraphs five and six of Talavera's Declaration are inadmissible expert opinions.  (*See* ECF No. 64 at 2–3.)  Paragraphs five and six read as follows.

> 5.  I personally reviewed the document that was sent by Jon Christopher on Monday, August 12th 2013 to Eric Coffman, the ACTIVE Network software engineer, and determined that the document contained an unencrypted version of a file called libsecure.php.  The libsecure.php file is normally encrypted and included with the SunShop software in a non-readable, non-editable format to secure portions of the code that deal with licensing, license keys, calls home and other private portions of the code.

> 6.  I have personal knowledge that when encrypted files are decrypted, the order of code and some variables in the code change slightly.  When I compared the file that Jon Christopher provided to Eric Coffman, I saw that the only areas of the code that were removed by Jon Christopher are the portions of code that deal with license key checks and sections of the code that reference call home functionality.  When I compared the code within the file sent by Mr. Christopher to Mr. Coffman, named "libsecure_active_decrypted_email_file.pdf" in Exhibit H, to a non encrypted version of the same libsecure.php file that was rearranged only to make comparison easy, named "libsecure_sunshop_unencrypted_and_rearranged.pdf" in Exhibit H, I see that these lines of code [] were removed on the exact day that Blue Bears license was suspended.

(ECF No. 62-1 ¶¶ 5–6.)

According to Federal Rule of Evidence 701, lay witnesses may provide opinions that are rationally based on their perception and helpful to the trier of fact so long as those opinions are not based on "scientific, technical, or other specialized knowledge within the scope of Rule 702 [expert testimony]."  Fed. R. Evid. 701.  Moreover, a plaintiff may testify to any particularized knowledge that they have by virtue of their position in their own business.  *See* Fed. R. Evid. 701 advisory committee's note to 2000 amendment.  Talavera can therefore explain what function different lines of code in his libsecure.php served and

whether that file was encrypted.  (*See, e.g.,* ECF No. 62–1 ¶ 5 (identifying portions of his code that "deal with license key checks and sections of the code that reference call home functionality").)

Furthermore, Talavera does not require specialized knowledge to determine that certain lines of code were present in his libsecure.php file but not in Defendants' version of that file.  (*See* ECF No. 62-1 ¶ 4 (explaining that Talavera has personal knowledge of Defendants' file through discovery).)  Plaintiffs argue that "anyone, even a lay person[,] can recognize the similarities of the lines of code" just as "[i]t does not take an expert to review and compare two writings to determine that they are identical."  (*See* ECF No. 65 at 2.)  The Court agrees.  One need not be an expert to look at two documents and determine which information is present in one and missing in the other.  The same principle applies when comparing the characters in two sets of code.

In sum, Mr. Talavera may properly offer his lay witness opinion about which parts of his code are missing from Defendants' file and what function those lines of code served.  Accordingly, the Court **OVERRULES** Defendants' objections to paragraphs five and six of the Talavera Declaration (ECF No. 62-1 at 2–3) and will consider this evidence when ruling on the Parties' Cross-Motions for Summary Judgment.

The Court concludes by noting that the rulings in this Order do not preclude the Parties from readdressing these evidentiary issues at trial.  Specifically, some of "Plaintiffs' evidence upon which the Court cannot rely presently [may] be admissible if properly authenticated and introduced; Plaintiffs will have an opportunity to do so at trial or via motions in limine."  *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d at 779–80.

## II.    Cross-Motions for Summary Judgment

Both Defendants and Plaintiffs have filed Cross-Motions for Summary Judgment.  Defendants' Motion seeks summary adjudication of three of Plaintiffs' eight claims: false designation of origin (claim 5); trade dress infringement (claim 6); and unjust enrichment (claim 8).  (*See generally* Defs' MSJ.)  Plaintiffs' Motion is not so clear.  (*Compare* Pls.' MSJ at 21 (claiming a triable issue of fact exists as to all claims), *with id*. at ii (claiming

the undisputed evidence shows Defendants are liable on all claims).)   Based on the substance of the arguments in Plaintiffs' Motion, they appear to seek summary adjudication of four claims: copyright infringement (claim 1); induced copyright infringement (claim 2); violation of DMCA § 1201(a)(2) (claim 3); and violation of DMCA § 1202 (claim 4). (*See id.* at 7, 10 (arguing "no triable issue of fact exists" as to these claims).)   Thus, the only claim for which no Parties seek summary adjudication is unfair competition (claim 7).

After a careful review of the record and the Parties' arguments, the Court concludes that Plaintiffs have failed to carry their burden of establishing a genuine dispute of material fact on Claims 5, 6, and 8.   Accordingly, the Court **GRANTS** Defendants' Motion for Partial Summary Judgment.   Additionally, the Court concludes that Defendants have met their burden of establishing a genuine dispute of material fact on Claims 1, 2, 3, and 4. Therefore, the Court **DENIES** Plaintiffs' Motion for Summary Judgment.

### A.   Claim 1: Copyright Infringement

Plaintiffs move for summary judgment on their claim of copyright infringement under 17 U.S.C. §§ 101 et. seq.  (*See* Pls.' MSJ at 10.)  The Copyright Act grants copyright holders an exclusive right to use or authorize the use of their work in five qualified ways. *See* 17 U.S.C. § 106.[7]  "'Anyone who violates any of the exclusive rights of the copyright owner,' that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work in one of the five ways set forth in the statute, 'is an infringer of the copyright.'"   *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) (citing 17 U.S.C. § 501(a)).

"To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the

---

[7]   The five ways a copyright holder may use or authorize use of their work are: (1) reproduction; (2) preparation of derivative works; (3) distribution of copies; (4) performance, if applicable; and (5) public display, if applicable.  *See* 17 U.S.C. § 106.

defendant." *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "Because direct copying is difficult to prove, a plaintiff can satisfy the second element by demonstrating that (a) the defendant had access to the allegedly infringed work and (b) the two works are substantially similar in both idea and expression of that idea." *Pasillas*, 927 F.2d at 440 (citing *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989)). "Our circuit has expressed a certain disfavor for summary judgment on questions of substantial similarity, but it is nevertheless appropriate to grant summary judgment if, considering the evidence and drawing all inferences from it in the light most favorable to the nonmoving party, no reasonable jury could find that the works are substantially similar in idea and expression." *Id.*; *see also Twentieth Century-Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327, 1330 (9th Cir. 1983) ("A grant of summary judgment for plaintiff is proper where works are so overwhelmingly identical that the possibility of independent creation is precluded.").

Plaintiffs contend that summary adjudication is warranted on their claim for copyright infringement because Talavera owns the SunShop software through Copyright Registration Nos. TX 5-896-387 and TX 9-010-501 and Defendants copied and used that software without authorization, thereby satisfying the ownership requirement and the copying requirement. (Pls.' MSJ at 5–6.) According to Plaintiffs, Defendants admitted to the unauthorized use of SunShop in an internal email sent on the date their license expired, August 12, 2013. (*See* Pls.' MSJ at 7; *see also* Pls.' Ex. G.) And, Plaintiffs argue, "Defendants continue to use, display, host, and distribute one or more infringing copies of Plaintiffs' copyrighted software at issue." (Pls.' MSJ at 7.)

Defendants, however, contend that there is a triable issue of material fact as to both (1) the ownership element and (2) the copying element, (*see* ECF No. 61 at 14–18), as well as whether (3) the Parties' license agreement precludes a copyright infringement claim, (*see id.* at 19–21), (4) Talavera abandoned his copyright interests, (*see id.* at 21–22), and / / /

(5) summary adjudication is precluded by the outstanding issue of damages, (*see id.* at 22). The Court addresses each argument in turn.

### 1.   Copyright Ownership

A copyright registration is presumptively valid unless an applicant knowingly includes inaccurate information in their application without which the Register of Copyrights would have denied the application.  *See* 17 U.S.C. § 411(b)(1); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 947–48 (2022).  Thus, Talavera's 2004 copyright registration for SunShop (the "Copyright Registration") is presumptively valid. Defendants, however, dispute the validity of the Copyright Registration based on the assertion that it contains false statements.  (ECF No. 61 at 21–22.)  Defendants identify two potential false statements: (1) the claim that Talavera authored the "entire source code" and (2) the claim that the code did not incorporate "any preexisting work."  (*See id.* at 21–22; Pls.' Ex. B.)

Defendants first challenge the validity of Talavera's claim that SunShop did not incorporate any preexisting work on the basis that Plaintiffs' website, between 2007 and 2010, advertised SunShop as a software with "98% open source code."  (*See* ECF No. 61 at 21; *see also* ECF No. 61-1 ("Defs.' Ex. E") at 5; Pls.' Ex. F ¶¶ 12–13.)  According to Defendants, open source code is, by definition, software "obtained from other works[,] which must have been specifically disclaimed by [Talavera] in seeking the [Copyright] Registration."  (ECF No. 61 at 14–15.)  Accordingly, Defendants argue, the Copyright Registration's assertion that SunShop does not incorporate any preexisting work is a false statement, leading to potential invalidation of the copyright.  (*Id.*)

In a Declaration from October 2021, Talavera acknowledged that the use of the phrase "open source code" in the SunShop advertising was "inartful and technically incorrect."  (*See* Pls.' Ex. F ¶ 13.)  Talavera initially attributed the error to TWT's advertising department but later admitted that he was the advertising department, and the error was his own.  (Defs.' Ex. E at 4.)  According to Talavera, the phrase "98% open source code" was meant to convey "that 98 percent of the code could be configured to the

customer's needs" and was not encrypted—not that the code was copied from preexisting work.  (*See* Pls.' Ex. F ¶ 13.)  Talavera maintains that SunShop is an original work and that the statements within his Copyright Registration are accurate.  (*See id.*)

"In considering a motion for summary judgment, . . . the court . . . is not permitted to weigh the evidence or to judge the credibility of witnesses." *See Neely v. St. Paul Fire and Marine Ins. Co.*, 584 F.2d 341, 344 (9th Cir. 1978).  Thus, the Court is unable to conclude that Defendants' preexisting work argument is foreclosed by Talavera's reasonable explanation for his use of the phrase "open source code."  To overcome the presumption of copyright validity at trial, Defendants will need to prove that (1) SunShop was actually based on preexisting material, (2) Talavera knew this when he applied for the Copyright Registration, and (3) the Register of Copyrights would have denied Talavera's Registration but for the false statement.  *See* 17 U.S.C. § 411(b)(1).  Although this will be a heavy burden, at this phase of the litigation the evidence presented by Defendants is sufficient to create a genuine, if minor, dispute as to the validity of Plaintiffs' Copyright Registration.

In a similar argument, Defendants assert that Plaintiffs' Copyright Registration is inaccurate because it claims that Talavera authored the "entire source code," (*see* Pls.' Ex. B), whereas in a deposition Talavera stated that an employee once helped him create a fourth version of SunShop by "migrat[ing] old code to better functionality," (*see* ECF No. 61-3 ("Defs.' Ex. F") at 78; *see also id.* at 79 ("we moved a lot of stuff to classes just to make it a little bit . . . visually cleaner)).  Yet, it is undisputed that the employee made these changes sometime between 2004 and 2006, (Defs.' Ex. F at 80), and according to the Copyright Registration, the SunShop code covered by the copyright was completed in 2001, (Pls.' Ex. B (stating the "year in which creation of this work was completed" was 2001).  Defendants have not challenged the accuracy of this statement.  (*See generally* ECF No. 61.)  Thus, Defendants' assertion that an employee worked on the code at some point between 2004 and 2006 does not call into question the accuracy of Plaintiff's claim that he wrote the entirety of the code that was completed in 2001.

For the foregoing reasons, the Court finds no genuine dispute regarding the accuracy of Talavera's claim that he authored the "entire source code." The Court does, however, find a genuine, if minor, dispute regarding the accuracy of Talavera's claim that the SunShop code did not incorporate "any preexisting work." Accordingly, there is a genuine dispute as to Plaintiffs' "ownership of the allegedly infringed work" which prevents the Court from granting summary judgment to Plaintiffs on their copyright infringement claim. *See Unicolors, Inc.*, 853 F.3d at 984.

### 2. Copying

Defendants also contend that there is a genuine dispute as to whether they copied Plaintiffs' software. Copying is used as a short-hand term for any unauthorized exercise of an author's exclusive rights under the Copyright Act. *See* S.*O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989). Copying may be proven through direct or indirect evidence. *See Pasillas*, 927 F.2d at 440 (explaining that indirect copying may be established through proof of access and substantial similarity). Here, there is incontrovertible direct evidence that Defendants exercised Plaintiffs' exclusive ownership rights without authorization.

In a sworn declaration from October 2021, Heartland's Vice President and General Manager of School Solutions stated that he believed Plaintiffs "neither terminated Active's access to the SunShop software nor deactivated nor blocked Active's use of the SunShop software" because "[t]hat same software is in use by Active through the present day."[8] (ECF No. 60-1 ("Pls.' Ex. D") ¶ 14.) Defendants adopted this position in the "Facts Section" of an earlier filing in this case, (*see* Pls.' Ex. E at 4 (stating "[t]hat same [SunShop] software is in use by Active through the present day")), and at the Hearing on the instant

---

[8] It is irrelevant that Defendants' Vice President mistakenly believed they were legitimately using the original version of the SunShop software, as there is no intent requirement for copyright infringement. *See UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*, 446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006) ("A plaintiff need not demonstrate the defendant's intent to infringe the copyright in order to demonstrate copyright infringement.")

21-CV-1585 TWR (MSB)

Motion, (ECF No. 66).  Thus, both Parties agree that Defendants still use the SunShop software.

It is also beyond genuine dispute that after 2013 Defendants' license to use the SunShop software was deactivated and suspended for non-payment.[9]  (*See* ECF No. 60-1 ("Pls.' Ex. J"); *see also* Pls.' Ex. G.)  Thus, for Defendants to have continued using the SunShop software after losing access to it in 2013, they necessarily must have copied the work or prepared a derivative version of it.  Defendants have not offered any alternative explanation for how they could have continued using SunShop after the expiration of their license without engaging in unauthorized use.[10]  "[O]wners of computer programs," like SunShop, "enjoy the exclusive rights set forth in the [Copyright] Act, including the right to 'reproduce [a] copyrighted work' or to 'prepare derivative works.'" *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199 (2021) (third alteration in original) (citing 17 U.S.C. § 106).  Consequently, by their own admission, Defendants have exercised Plaintiffs' exclusive ownership rights under the Copyright Act without authorization.[11]

Still, to establish unauthorized use, a plaintiff must also prove "that the defendant copied 'protected elements' of the [plaintiff's] work." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 636 (9th Cir. 2008).  Despite the clear evidence of copying, Defendants assert that "there is a dispute of fact as to whether Defendants copied any *protect[a]ble elements*" of the SunShop software.  (*See* ECF No. 61 at 25 (emphasis added).)  "The protected elements of a work are those elements which are 'original,' which is to say they are the product of 'independent creation, not novelty.'"  *Jada Toys*, 518 F.3d at 636 (internal citation omitted).  Defendants argue that the SunShop code is unoriginal for the same reason that the copyright is allegedly invalid—because Plaintiffs advertised SunShop as

---

[9]     The expiration of the Parties' license agreement is discussed further in Section II.A.3.

[10]    Defendants do not raise the affirmative defense of fair use.

[11]    In their briefing, Defendants argue that there is a genuine dispute as to whether Active employee Jon Christopher removed license keys and call home technology from the SunShop code.  Although this may be relevant to Plaintiffs' DMCA claims, it is not relevant to the copyright infringement claim because Defendants have already admitted to the unauthorized use of the SunShop software.

"98% open source code," meaning the code is unoriginal. (*See id.*)  For the reasons discussed in Section II.A.1, the Court finds a narrow but genuine dispute as to whether the SunShop code is original and therefore protectable.

> 3.   *License Agreement*

Defendants also argue that summary adjudication of Plaintiffs' copyright infringement claim is precluded because Defendants' use of the SunShop software falls within the scope of the Parties' license agreement (the "Agreement"). (*See* ECF No. 61 at 28.)  A copyright infringement claim must fail if a defendant's use of the copyright falls within the scope of a valid license.  *See S.O.S., Inc.*, 886 F.2d at 1087–88.

Defendants' argument is premised upon Section 1.1 of the Parties' Agreement, which states, "You are bound to this Agreement during the entire time span in which you have possession of this software, in its original or altered state." (*See* ECF No. 61 at 28 (quoting ECF No. 4 at 9 (License Agreement)).)  Evidently, Defendants believe that by keeping physical possession of the SunShop software, they remain fully licensed to use it for as long as they wish. (*See id.*)  Yet Section 4.1 of the Parties' license agreement clearly states, "Failure to pay timely and in full constitutes a material breach of this agreement." (ECF No. 4 at 11.)  And a failure to renew the license annually, "will result in termination of [the] license and license keys." (*Id.* at 11.)

Defendants admit that they stopped paying license fees in 2013, (*see* Loch Decl. at 2), at which point Plaintiffs informed Defendants that their "Domain License" to the SunShop software had been "suspended," (Pls.' Ex. J; *see also* ECF No. 4 at 11 ("TWT may suspend, revoke, or terminate this Agreement if you fail to comply with any of its provisions.")).  Under the license agreement, Defendants were then required to "delete all copies and instances of TWT's Software(s) from [their] possession within 24 hours of TWT's Agreement termination notice." (*See* ECF No. 4 at 11.)  Defendants did not spontaneously extend their license agreement by failing to so; in fact, they appear to have violated it further.

/ / /

Although Defendants initially used the SunShop software pursuant to a valid license, that license was unequivocally terminated on August 12, 2013. Any use after that point did not fall within the scope of a valid license and no reasonable jury could find otherwise. Thus, Defendants' argument that Plaintiffs' copyright infringement claim is precluded by a valid license is rejected by the Court as a matter of law.

### 4.      Abandonment of Copyright

Next, Defendants argue Plaintiff Talavera may have abandoned his SunShop copyright because he "allowed third party TWT to act as the exclusive licensor of the copyright and SunShop software even though Talavera knew that TWT did not have a right to do so." (ECF No. 61 at 22; *see also* ECF No. 62-4 at 82–83.) Although TWT does not own the Copyright Registration, (Jt. Stmt. ¶ 8), it has been informally authorized by Talavera to act as SunShop's copyright and license administrator, (FAC ¶ 9; *see also* ECF No. 61 at 29). According to Defendants, this agreement between the co-Plaintiffs constitutes an abandonment of the SunShop copyright and precludes Talavera from bringing a copyright infringement claim against Active, Heartland, and GPI. (*See id.*)

Generally, "[a]bandonment . . . must be manifested by some overt act indicative of a purpose to surrender the [copyright owner's] rights and allow the *public* to copy." *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960) (emphasis added). Rarely will a court entertain an argument that a copyright has be surrendered to another individual. In support of their assertion that this is one of those rare occasions, Defendants cite to an unreported case called *Softketeers, Inc. v. Regal W. Corp.*, No. SACV19519JVSJDEX, 2020 WL 6115092 (C.D. Cal. Aug. 13, 2020). In *Softketeers*, the plaintiff was hired by the defendant to create a software program. *Id.* at 1–2. The plaintiff told its customers that the defendant owned the copyright for the software, but after the parties' business relationship soured the plaintiff copyrighted the software for itself and sued the defendant for infringement. *Id.* at 1–2, 4. The court found a genuine dispute as to whether the plaintiff "manifested an intention to abandon its [copyright] interest to [the defendant], but not to *the public*." *Id.* at 4 (emphasis in original).

21-CV-1585 TWR (MSB)

The plaintiff in *Softketeers* may have surrendered its copyright to the defendant but here, by contrast, Defendants have not argued that Talavera surrendered his copyright to Active, Heartland, or GPI.  Instead, "Defendants claim that Plaintiff Talavera abandoned his copyright interests to Plaintiff TWT: not Defendants," as Plaintiffs correctly point out. (ECF No. 62 at 13.)  *Softketeers* certainly does not provide Defendants with the right to raise an abandonment defense on behalf of a co-Plaintiff.  Thus, Talavera and TWT's agreement that TWT would act as the copyright and license administrator for SunShop does not constitute abandonment, and no reasonable jury could find otherwise.

### 5.    Damages

Finally, Defendants assert that Plaintiffs' motion "must be denied" because they failed to submit any evidence "as to the damages they allegedly suffered."  (*See* ECF No. 61 at 29.)  Specifically, "Defendants' expert, Kurt Stake, [has] opined [that] 'Plaintiff has not provided sufficient information to analyze or assess that any financial damages have been incurred by the Plaintiffs as a result of the Defendant's Actions.'"  (*Id.* (citing ECF No. 61-5, "Defs.' Ex. H" ¶ 5).)  "The calculation of damages is not ordinarily amenable to resolution at the summary judgment stage," and accordingly, a court may grant summary judgment on the issue of liability while reserving the issue of damages for trial.  *See United States v. Honeywell Int'l, Inc.*, 542 F. Supp. 2d 1188, 1201 (E.D. Cal. 2008); *see also* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment ("[S]ummary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense.")  Defendants have cited no case law to the contrary.  Thus, because damages are not an essential element of liability for copyright infringement, the Parties' dispute over that issue does not preclude summary judgment.

In sum, summary adjudication of Plaintiff's copyright infringement claim is not precluded by the Parties' prior license agreement, any abandonment of the Copyright Registration, or an outstanding dispute regarding damages.  Still, viewing the evidence in the light most favorable to Defendants, there is a genuine dispute regarding the Copyright

/ / /

21-CV-1585 TWR (MSB)

Registration's validity and the protectability of the copied elements.  Therefore, the Court **DENIES** Plaintiffs' Motion for Summary Judgment on their copyright infringement claim.

### B.      Claim 2: Induced Copyright Infringement

Plaintiffs also move for summary judgment on the induced copyright infringement claim under 17 U.S.C. §§ 501 et. seq.  (*See* Pls.' MSJ at 16 ("Plaintiffs are entitled to summary judgment on the . . . second . . . claim[] for relief.").)  Yet, as Defendants correctly point out, Plaintiffs' Cross-Motion contains no argument on this issue.  (*See generally* Pls.' MSJ; *see also* ECF No. 61 at 19 ("Plaintiffs argue that they are entitled to judgment on their copyright infringement claim (Claim One), but there is no mention of any alleged contributory or inducement of copyright infringement (Claim Two).").)  Nor do Plaintiffs discuss this issue in their Reply in Support of the Cross-Motion.  (*See generally* ECF No. 62.)

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court notes that, according to Plaintiffs' verified First Amended Complaint, Defendants purportedly induced third party users, school webstores, and their purchasers to infringe on Plaintiffs' SunShop Copyright by providing the SunShop software to schools and consumers without Plaintiffs' consent.  (*See* FAC ¶ 55.)  Although an individual who knowingly contributes to another's infringing activities may be held liable under 17 U.S.C. § 501,[12] a moving

/ / /

---

[12]      Various Supreme Court and Ninth Circuit cases support this form of liability.  *See e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 930, 936–37 (2005); *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 435–42 (1984); *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 264 (9th Cir. 1996).

21-CV-1585 TWR (MSB)

party cannot receive summary judgment on an issue without presenting any argument or record citations. *See* Fed. R. Civ. P. 56(c)(1).

"[T]he Federal Rules do not contemplate that a court may dispose of a cause by summary judgment, when the basis for the judgment was not raised by the movant with sufficient precision for the nonmovant to respond." *Cooper v. Ford Motor Co*., 748 F.2d 677, 680 (Fed. Cir. 1984). On this claim, Plaintiffs have provided no basis for summary adjudication. Moreover, at the Motion Hearing Plaintiffs conceded that if there is a genuine dispute as to the copyright infringement claim, there is necessarily a genuine dispute as to the induced copyright infringement claim. Consequently, the Court **DENIES** Plaintiffs' Motion for Summary Judgment on their induced copyright infringement claim.

### C.   Claim 3: Violation of the Digital Millenium Copyright Act § 1201(a)(2)

Plaintiffs next move for summary adjudication of their claim for circumvention in violation of section 1201(a)(2) of the Digital Millenium Copyright Act. (*See* Pls.' MSJ at 16.) Section 1201(a)(2) prohibits trafficking in technology that circumvents a technological measure effectively controlling a copyrighted work. *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 942 (9th Cir. 2010). Thus, to prevail on their Section 1201(a)(2) claim, Plaintiffs must establish that: (1) SunShop is a protected work; (2) technological measures effectively controlled access to SunShop; and (3) Defendants trafficked in technology intended to circumvent those access controls. *See* 17 U.S.C. § 1201(a)(2).

#### 1.   Protected Work

First, Plaintiffs assert that the SunShop software, code, and resulting screen displays constitute protected work. (*See* Pls.' MSJ at 14.) Plaintiffs erroneously claim that such work became protected when it was "fixed in a tangible medium of expression," regardless of whether it was copyrighted. (*See id*.) Although copyright protection can be afforded once a work is fixed in a tangible medium, to qualify as a "protected work" under Section 1201 a work must first be copyrighted. *See MDY Indus., LLC,* 629 F.3d at 945. Because there is a genuine dispute as to the validity of Plaintiff's Copyright Registration for the

reasons discussed in Section II.A.1, there is also a genuine dispute as to whether SunShop is a protected work under the DMCA.

### 2. *Technological Measures to Control Access*

Next, Plaintiffs assert that their technological measures effectively controlled access to SunShop because "Plaintiffs' license keys and other technological measures, such as login credentials, control access to Plaintiff Talavera's protected works via the application of information (i.e.: the actual username, password, and certificate), the provision of which is controlled by Plaintiff TWT." (*See* Pls.' MSJ at 15.) The Court has also received and reviewed Plaintiffs' license agreement, (ECF No. 4 at 11), an image of its password-protected administrator login screen, (*id.* at 5), and a Deposition from Defendants' employee which indicates that SunShop had a 30-character license key, (*see* Defs.' Ex. G at 4).

"[A] technological measure 'effectively protects a right of a copyright owner under this title' if the measure, in the ordinary course of its operation, prevents, restricts, or otherwise limits the exercise of a right of a copyright owner under this title." 17 U.S.C. § 1201(a)(3)(B). At the Motion Hearing, Defendants argued that Plaintiffs have not presented sufficient proof of the effectiveness of their access controls. Yet license agreements and license keys are commonly considered effective, and Defendants have not presented any evidence to suggest that Plaintiffs' license agreements and keys were somehow ineffective. *See e.g., Coupons, Inc. v. Stottlemire,* 588 F. Supp. 2d 1069, 1074 (N.D. Cal. 2008) (finding registry keys inherently effective access controls); *Microsoft Corp. v. EEE Business, Inc.,* 555 F. Supp. 2d 1051, 1059 (N.D. Cal. 2008) (finding license agreements and keys inherently effective access controls). Moreover, if Defendants intend to suggest that their own ability to circumvent Plaintiffs' licensing restrictions is evidence of the restrictions' ineffectiveness, "this is equivalent to a claim that, since it is easy to find skeleton keys on the black market, a deadbolt is not an effective lock to a door"—a claim that our sister courts have found unpersuasive. *See, e.g., 321 Studios v. Metro Goldwyn Mayer Studios*, *Inc.*, 307 F. Supp. 2d 1085, 1095 (N.D. Cal. 2004). Accordingly, the Court

finds no genuine dispute as to whether Plaintiffs' technological measures effectively controlled access to SunShop.

### 3. Trafficking

Finally, Plaintiffs must establish that Defendants trafficked in technology meant to circumvent their access controls. Although Plaintiffs generally allege that "Defendants' access methods circumvented Plaintiffs' technological measures to provide virtually unfettered access to Plaintiffs' source code," (*see* Pls.' MSJ at 15), nowhere in their Cross-Motion do Plaintiffs allege that Defendants *trafficked* in a technology designed to circumvent these access controls, (*see generally* Pls.' MSJ). From the Court's review of the record, there is no clear evidence of trafficking. Plaintiffs have therefore failed to establish the trafficking component required for liability under DMCA Section 1201(a)(2).

### 4. Circumvention

Instead, Plaintiffs argue for summary judgment under Section 1201(a)(1), which is a more general prohibition against "circumvent[ing] a technological measure that effectively controls access to a work protected under this title." (*See* Pls.' MSJ at 13 (quoting 17 U.S.C. § 1201(a)(1)(A)).) Unlike Section 1201(a)(2), Section (a)(1) does not require proof of trafficking—only circumvention. Although Plaintiffs' First Amended Complaint only explicitly cites to Section 1201(a)(2), it does allege that Defendants circumvented technological measures controlling access to Plaintiffs' work. (*See* FAC at 17–18.) The Complaint alleges, "Defendant[s'] 'code' is used to circumvent a technological protection measure since it avoids, bypasses, removes, descrambles, decrypts, deactivates, or impairs a technological protection measure without Plaintiffs' authority for the purpose of gaining unauthorized access to the Copyrighted SunShop Work." (*See id.*) The Court therefore finds that Defendants have been provided sufficient notice of Plaintiffs' intent to seek liability under Section 1201(a)(1) of the DMCA.

Furthermore, Defendants do not object to the Cross-Motion's arguments for liability under Section 1201(a)(1). (*See generally* ECF No. 61.) And absent objection or prejudice, "amendment [of a pleading] to conform to evidence may be made at any time." *See*

*Brandon v. Holt*, 469 U.S. 464, 471 n.19 (1985); *see also* Fed. R. Civ. P. 15(b).  In light of the foregoing, the Court will consider Plaintiffs' arguments for summary judgment under the circumvention provision of Section 1201(a)(1).

Plaintiffs assert that the issue of circumvention is undisputed because "Defendants concede that (1) to date, they still utilize Plaintiffs' SunShop software, and (2) evidence has been produced demonstrating that Defendants bypassed the expired license *on the date the license expired.*"  (*See* Pls.' MSJ at 15 (emphasis in original).)  Specifically, Plaintiffs argue, Defendants bypassed the expired license by decrypting Plaintiffs' encrypted work.  (*See id.*)  Defendants respond that "Plaintiffs have provided no admissible evidence that anyone at Active Network, or any of the Defendants, removed the licensing controls in Plaintiffs' software."  (ECF No. 61 at 24.)  To the contrary, Defendants argue, Active employee Jon Christopher "stated unequivocally [at his deposition] that he did not remove the licensing controls or other features designed to notify Plaintiffs of an expired license."  (*See id.*; *see also* Defs.' Ex. G at 4.)

Typically, courts may not make credibility determinations on motions for summary judgment, *see e.g., Anderson,* 477 U.S. at 255, and "if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact," *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987).  Thus, the Court accepts as true Jon Christopher's statement that he did not "remove the license key" or "call home technology" from the SunShop program.  (*See* Defs.' Ex. G at 4.)  Yet the issue is not whether Mr. Christopher circumvented SunShop's access controls, but whether the companies did.  Defendants may still be held liable for circumvention even if Plaintiffs cannot identify the specific employee responsible for the act of circumvention.  Accordingly, the issue on summary judgment is whether the Defendant companies indisputably circumvented a technological measure.

To circumvent "means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure,

without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). As discussed in Section II.A.3, Plaintiffs indisputably revoked Defendants' authorization to use the SunShop software by suspending and deactivating Defendants' "Domain License" on August 12, 2013. (*See* Pls.' Ex. J.) Defendants admit, however, that they "maintain physical possession of the [SunShop] software," (*see* ECF No. 61 at 28), which "is in use by Active through the present day," (*see* ECF No. 8 at 10; *see also* Loch Dec. at 2 (Defendants' Vice President stating the same)). If a former licensee continues to access a protected work without a license to do so, they have effectively "avoid[ed] and bypass[ed]" the licensor's technological measures controlling access. *See 321 Studios*, 307 F. Supp. 2d 1085, 1098 (N.D. Cal. 2004); *see also* 17 U.S.C. 1201(b)(2) (explaining that "avoiding [or] bypassing . . . a technological measure" constitutes circumvention). Thus, by using the SunShop software after their license was suspended, Defendants admittedly circumvented Plaintiffs' access controls.[13]

Although Plaintiffs have indisputably established that SunShop is protected by effective access controls and that Defendants circumvented those controls, there is still a genuine dispute as to whether the Copyright Registration is valid and accordingly, whether SunShop is a "protected work" under the DMCA. In light of the foregoing, the Court **DENIES** Plaintiffs' Motion for Summary Judgment on the DMCA § 1201 claim.

### D.   Claim 4: Violation of the Digital Millenium Copyright Act § 1202

Plaintiffs also move for summary judgment on their claim for false or removed copyright management information in violation of Section 1202 of the Digital Millenium Copyright Act. (*See* Pls.' MSJ at 16.) Section 1202 requires a plaintiff to establish that the defendant (1) removed or altered copyright management information and (2) acted with the requisite mental state (intent for Section 1202(b)(1) and knowledge for Sections

---

[13]   Bypassing licensing restrictions is alone sufficient to establish circumvention. Thus, the Court need not determine whether Defendants also circumvented Plaintiffs' access controls by allegedly decrypting the software and removing the call home portions of code.

1202(b)(2) and (b)(3)).  *See Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 938 (C.D. Cal. 2018); *see also Stevens v. Corelogic, Inc*., 899 F.3d 666, 674 (9th Cir. 2018) (requiring a plaintiff to also demonstrate a "past pattern of conduct or modus operandi").

Although Plaintiffs' Cross-Motion quotes Sections 1202(a) and (b) in full, it fails to do anything more.  (*See* Pls.' MSJ at 13.)  As Defendants correctly point out, "there is almost no mention of, and certainly no argument or evidence relating to, Defendants' alleged alteration or removal of copyright management information or attribution within the software (Claim Four)."  (*See* ECF No. 61 at 19.)  As discussed in Section II.B, a party moving for summary judgment must provide the basis for its motion and identify any supporting evidence in the record.  *See also Celotex Corp.*, 477 U.S. at 323.  A court may not grant summary judgment when the basis for that judgment was not raised by the movant with sufficient precision.  *See also Cooper*, 748 F.2d at 680.  Accordingly, the Court **DENIES** Plaintiffs' Motion for Summary Judgment on the Digital Millenium Copyright Act § 1202 claim.

### E.    *Claim 5: False Designation of Origin*

Defendants move for summary judgment on Plaintiffs' claim for false designation of origin under Section 43(a) of the Lanham Act (15 U.S.C. 1125(a)).  To prevail on a false designation of origin claim, a plaintiff must demonstrate that the defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services."  *Freecycle Network, Inc. v. Oey,* 505 F.3d 898, 902 (9th Cir. 2007).  "The term 'origin' in section 43(a) lends itself to two causes of action for 'passing off' based on false designation of origin: passing off and reverse passing off."  *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc*., 897 F.3d 1008, 1016 (9th Cir. 2018).

In the First Amended Complaint, Plaintiffs allege that Defendants engaged in "reverse passing off" in violation of Section 43(a).  Reverse passing off occurs when a "[p]roducer misrepresents someone else's goods or services as his own."  *See Daster Corp.*

*v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) (citation omitted). According to Plaintiffs, Defendants engaged in reverse passing off "by misrepresenting to the public that: Plaintiff's copyrighted SunShop software program, source code and shopping cart services are owned by, or otherwise originated from such Defendant(s); and/or that the identical or nearly identical and infringing version of the Defendant(s) software program, source code and shopping cart services are unique properties created and offered by such Defendants."  (*See* FAC ¶ 82.)

Defendants argue that summary adjudication of Plaintiffs' reverse passing off claim is warranted for two reasons.  First, Defendants argue Plaintiffs have not established any "underlying *trademark* or *trade dress* right(s)," as required for reverse passing off.  (*See* Defs.' MSJ at 9 (emphasis in original).)  In reply, Plaintiffs assert that they need not prove possession of a valid trademark, only that Defendants used a "name, symbol, or device in connection [their] goods and services [that] is likely to cause confusion as to whether [they] were originated or authorized for use by the plaintiff." (*See* Pls.' MSJ at 16.)  Plaintiffs are correct that Section 43(a) does not explicitly require a plaintiff to be the owner of a protectable mark.  *See* 5 McCarthy on Trademarks and Unfair Competition § 27:13 (5th ed.).  Thus, Plaintiffs' lack of trademark registration does not necessarily prevent them from pursuing a claim for reverse passing off.[14]

Still, as Defendants argue, (Defs.' MSJ at 10–11), Plaintiffs' reverse passing off claim must fail for a second reason: because "a reverse passing off claim cannot be brought to prevent the copying of intellectual property."  *See OTR Wheel Eng'g, Inc.*, 897 F.3d at 1016.  In *Dastar*, the leading Supreme Court case on this issue, the Court held that a reverse passing off claim may only be brought to protect "the tangible goods that are offered for sale and not . . . any idea, concept, or communication embodied in those goods."  *See* 539 U.S. at 37.  In that case the defendant, Dastar, purchased video tapes of the plaintiffs'

---

[14]    However, Plaintiffs still have not identified what specific "name, symbol, or device" used by Defendants is likely to cause confusion.

21-CV-1585 TWR (MSB)

television series, copied and edited them, and then put the footage onto its own tapes, which Dastar in turn sold to the public. *Id.* at 26–27. Although this would have been an "easy claim of copyright infringement," the plaintiffs could not bring a reverse passing off claim because "Dastar was the 'origin' of the products it sold as its own." *Id.* at 38; *see also id.* at 36 (explaining that a reverse passing off claim cannot be premised on plagiarism). While the plaintiffs' tangible goods (the tapes) were protected, the information on those tapes was not.

Here, Defendants' actions are analogous to those of Dastar. The evidence—viewed in the light most favorable to Plaintiffs—demonstrates that Defendants copied Plaintiffs' SunShop software code into a new file, removed "the portions of [Plaintiffs'] code that deal with license key checks and sections of the code that reference call home functionality," and then offered that product to potential clients. (*See* ECF No. 62-1.) Although these actions amount to copying, "copying is dealt with through copyright and patent laws, not through trademark law" such as the Lanham Act. *See OTR Wheel Eng'g, Inc.*, 897 F.3d at 1016. Because Plaintiffs have failed to present any evidence that Defendants passed off their tangible goods as their own, Plaintiffs' reverse passing off claim must fail. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment on the false designation of origin (reverse passing off) claim.

### F.   Claim 6: Trade Dress Infringement

Defendants next move for summary judgment on Plaintiffs' claim for trade dress infringement[15] under section 43(a) of the Lanham Act (15 U.S.C. 1125(a)). "Trade dress refers generally to the total image, design, and appearance of a product and 'may include features such as size, shape, color, color combinations, texture or graphics.'" *Clicks*

---

[15]   Defendants also move for summary judgment on the claim of trademark infringement. (*See* Defs.' MSJ at 11–12.) Although the First Amended Complaint alleges "trademark/trade dress infringement," the substance of Plaintiffs' claim appears to address only trade dress infringement. (*See* FAC at 25–27.) Furthermore, Plaintiffs' Cross-Motion does not refute Defendants' assertion that their claim for trademark infringement fails as a matter of law. (*See generally* Pls.' MSJ.) Accordingly, insofar as a trademark infringement claim exists, the Court **GRANTS** Defendants' Motion to Dismiss that claim.

*Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (citing *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)).  Once a trade dress has been identified, a plaintiff may establish infringement by proving that (1) the claimed trade dress is "nonfunctional" and (2) serves a "source-identifying role either because it is inherently distinctive or has acquired secondary meaning" and that (3) defendant's use creates a likelihood of confusion.  *Id.* (citing *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.,* 158 F.3d 1002, 1005 (9th Cir. 1998)); *see also Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987).

According to the First Amended Complaint, "Plaintiffs' Trade Dress has been prominently displayed in the SunShop software."  (*See* FAC ¶ 93.)  Plaintiffs claim such trade dress is "non-functional" and "distinctive of [the] SunShop webstore shopping cart program and distinguishes SunShop." (*See id.* ¶¶ 93–94.)  Finally, the Amended Complaint alleges Defendants' "unauthorized use, sale and distribution of goods displaying Plaintiff[s'] Trade Dress is likely to cause confusion." (*See id.* ¶ 96; *see also id.* ¶¶ 97–100.)  Defendants seek summary adjudication of Plaintiff's trade dress infringement claim on the basis that Plaintiffs "have failed to articulate any alleged trade dress, irrespective of its protectability" and "fail[ed] to produce evidence such that a reasonable trier of fact could find the design non-functional or distinctive or that there is a likelihood of confusion." (*See* Defs.' MSJ at 13.)

As a preliminary matter, to bring a claim for trade dress infringement, a plaintiff must demonstrate that they possess a trade dress.  "Without a clear statement of the claimed trade dress, the Court can neither determine whether the claimed dress is valid nor appropriately tailor any necessary injunctive relief." *Indonesian Imports, Inc. v. Old Navy, Inc.*, No. C98-2401 FMS, 1999 WL 179680, at *3 (N.D. Cal. Mar. 30, 1999).  Trade dress is the design or total image of a product, "including features such as size, shape, color, texture and graphics." *See Moldex-Metric, Inc. v. McKeon Prod., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (citation omitted).  Although some courts have found that the "look and feel" of a website may constitute trade dress, no court has extended the definition of trade

dress to include software programs.  *See e.g., Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d 1105, 1136 (N.D. Cal. 2014); *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1239 (C.D. Cal. 2014).  Although the First Amended Complaint claims "Plaintiffs' Trade Dress has been prominently displayed in the SunShop software," (FAC ¶ 93), the Court assumes Plaintiffs' potential trade dress is the website that the SunShop software produces and not the software program itself.

Still, Defendants argue that Plaintiffs' trade dress infringement claim fails as a matter of law because Plaintiffs never "describe the particular trade dress Plaintiffs allege is protected." (*See* Defs.' MSJ at 14.)  The Court agrees.  Nowhere does the Amended Complaint describe or depict Plaintiffs' SunShop website.  Nor do Plaintiffs present any evidence of the website's design or appearance in support of their summary judgment briefing; instead, they simply repeat the non-descript allegations from their Amended Complaint. (*See* Pls.' MSJ at 18.)  For example, the Cross-Motion alleges "the overall structure, as well as the unique form, fonts, titles, layout, appearance and functionality of [Defendants'] program appeared identical to SunShop." (*See id.* (citing FAC ¶ 34).)  But based on Plaintiffs' briefing, the Court knows nothing about the appearance, layout, or structure of the two programs or websites.

Plaintiff addressed the Court's concerns at the Motion Hearing by asking the Court to refer back to their Motion for a Temporary Restraining Order or Preliminary Injunction—filed over a year ago—which contains images of Plaintiffs' website and "two Active Network hosted school webstore home screens." (*See* ECF No. 3.)  That image, displayed on the next page, does nothing to advance Plaintiffs' trade dress infringement argument.

/ / /

/ / /

/ / /

/ / /

/ / /



(*See id.* at 4 (displaying Plaintiffs' website on the left and the allegedly infringing websites on the center and right).)

To survive a motion for summary judgment, a plaintiff must "clearly define the elements of its product design that it claims [is] protected trade dress" and "a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea." *Indonesian Imports, Inc. v. Old Navy, Inc.*, No. C98-2401 FMS, 1999 WL 179680, at *3, *5 (N.D. Cal. Mar. 30, 1999) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)). Although Plaintiffs have pointed the Court to an image of their website, they have failed to define the elements of their website design that constitute trade dress and merit protection.[16]

Ultimately, it is not the Court's role "to scour the record in search of genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). "We rely on the nonmoving party

---

[16]   Moreover, based on these website images, there does not appear to be a genuine dispute regarding a likelihood of confusion. However, the Court need not reach the issue of confusion because Plaintiffs have failed to adequately identify their trade dress.

to identify with reasonable particularity the evidence that precludes summary judgment." *Id.* Plaintiffs have failed to identify such evidence here. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment on the trade dress infringement claim.[17]

### G.   Claim 8: Unjust Enrichment

Finally, Defendants move for summary judgment on Plaintiffs' claim for unjust enrichment under California common law. Defendants allege that "[u]njust enrichment is not recognized by California courts as a cause of action" and "[a]s such, Plaintiffs' Eighth Claim for Relief fails as a matter of law." (*See* Defs.' MSJ at 20–21.) Defendants are correct that "in California, there is not a standalone cause of action for 'unjust enrichment'"; however, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

Plaintiffs' First Amended Complaint alleges that "by using, displaying, reselling, 'sublicensing' and distributing Plaintiffs' software program, and code, and derivative works unlawfully created from same, Defendants . . . have been unjustly enriched at the expense of Plaintiffs" and therefore must disgorge their ill-gotten gains. (FAC ¶¶ 121–22.) To prevail on a quasi-contract unjust enrichment claim such as this, a plaintiff must establish that the defendant (1) received a benefit and (2) unjustly retained that benefit at the plaintiffs' expense. *See Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1065 (N.D. Cal. 2021)).

"Unjust enrichment is," however, "an equitable rather than a legal claim; consequently, no action for unjust enrichment lies where a contract governs the parties' relationship to each other" or "where a legal remedy for the same wrong is available against a different party." *McKesson HBOC, Inc. v. NY State Common Retirement Fund, Inc.*, 339 F.3d 1087, 1091, 1093 (9th Cir. 2003); *see also Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,

---

[17]    Because Plaintiffs have failed to adequately define their trade dress, the Court does not reach the issue of infringement.

96 F.3d 1151, 1167 (9th Cir. 1996).  Here, Plaintiffs do not allege that a traditional remedy at law would be inadequate.  *See Cho v. Hyundai Motor Co., Ltd*., No. 822CV00448SPGKES, 2022 WL 16966537, at *13 (C.D. Cal. Oct. 21, 2022) (collecting cases in which courts dismissed unjust enrichment claims on this ground).  In fact, at the Motion Hearing, Plaintiffs conceded that unjust enrichment is not a separate cause of action but rather a theory of recovery.  In light of the foregoing, the Court **GRANTS** Defendants' Motion for Summary Judgment on Plaintiffs' unjust enrichment claim.

### H.    *Claims Against Heartland and GPI*

Although Defendants failed to raise this issue in their initial Motion, they argue in their consolidated Reply in Support of the Motion and Opposition to Plaintiffs' Cross-Motion that "Plaintiffs have demonstrated they cannot succeed on any claims against Global Payments, Inc. and Heartland Payments, LLC, [and] the Court should enter judgment in favor of those two defendants on all claims set forth in the First Amended Complaint." (ECF No. 61 at 32–33.)  Specifically, Defendants assert that "Plaintiffs have presented no evidence that either Global Payments or Heartland Payment Systems had *anything* to do with the alleged events at issue here, the subject license agreement, or the accused software." (ECF No. 61 at 32 (emphasis in original).)  According to Defendants, Plaintiffs' Cross-Motion only mentions Heartland and GPI once, alleging, without evidentiary support, "that the entities had access to the SunShop software." (*See id.* (referencing Pls.' MSJ at 2).)

Pursuant to Federal Rule of Civil Procedure 56(f), a court may grant summary judgment in favor of a non-moving party with proper notice, Fed. R. Civ. P. 56(f), and "may [even] grant summary judgment without notice if the losing party has had a full and fair opportunity to ventilate the issues involved in the motion," *see In re Harris Pine Mills*, 44 F.3d 1431, 1439 (9th Cir. 1995).  Defendants argue Plaintiffs have been provided a full and fair opportunity to address Heartland and GPI's liability in their Cross-Motion and to respond to Defendants' arguments in their Reply in Support of the Cross-Motion.  (*See* ECF No. 61 at 32.)  Plaintiffs did not address the issue in their Reply or raise it themselves

in earlier briefing.  (*See generally* ECF No. 62; Pls.' MSJ.)  Therefore, the Court raised the issue at the Motion Hearing.  In response, Plaintiffs pointed to two assertions in the First Amended Complaint that allegedly support liability for Heartland and GPI:

> [1] Currently, and at all relevant times, Active Network, Heartland Payment Systems, LLC and Global Payments each have offered marketing and support for the infringing school software products that are mentioned in this Verified Complaint.

> [2] Heartland is believed to have assumed at least a portion of the school software sales, support and marketing duties of Active Network and/or Global Payments, for the infringing school software sold and distributed by Defendants which uses, relies upon and includes the Plaintiff's SunShop software without Plaintiffs' authorization or consent.

(FAC at 7, 8.)

Pursuant to Section I.A.1 of this Order, the Court will not consider any statements within the First Amended Complaint which are based upon information and belief because Mr. Talavera lacks the personal knowledge to testify to such information at trial.  Plaintiffs' second allegation in the excerpt above is based upon Mr. Talavera's "belie[f]."  (*See* FAC at 8.)  Accordingly, the Court will not consider Plaintiffs' second allegation.  This leaves only the first allegation, which asserts that Heartland and GPI "offered marketing and support" for the infringing software.

After analyzing the elements of Plaintiffs' copyright infringement claim and DMCA claims, the Court concludes that Heartland and GPI could not be held liable based on marketing and support alone.  There is, however, a genuine dispute as to whether Heartland and GPI may be held liable for induced copyright infringement and unfair competition based on their marketing and support of the allegedly infringing software.  Accordingly, the Court *sua sponte* **DISMISSES** the copyright infringement claim, DMCA § 1201 claim, and DMCA § 1202 claim against Heartland and GPI.

## I.     *Claims Against Doe Defendants*

The Court is compelled to address a final matter, though neither Party raised it in their briefing.  In addition to Defendants Active, Heartland, and GPI, the First Amended

21-CV-1585 TWR (MSB)

Complaint also names 229 fictitious Doe Defendants. (*See* ECF No. 16.)  Although Federal Rule of Civil Procedure 10(a) requires a complaint to name all parties, *see* Fed. R. Civ. P. 10(a), the Ninth Circuit has generally held that "plaintiff[s] should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Here, the deadline to complete discovery has passed and Plaintiffs still have not named nor served the Doe defendants. (*See generally* Docket.)  Furthermore, Plaintiffs' claims are clearly directed at the named Defendants.

Federal Rule of Civil Procedure 4(m) allows the court to dismiss any defendants who are not timely served after providing notice to the plaintiff.  *See* Fed. R. Civ. P. 4(m).  Furthermore, Rule 56(f) allows the court to grant summary judgment *sua sponte* for a non-moving party when the moving party is given notice.  Fed. R. Civ. P. 56(f).  The Court hereby provides Plaintiffs with notice of its intent to dismiss Does 1 through 229 under Rules 4(m) and 56(f).  Plaintiffs **MAY FILE** a response in opposition to the dismissal of the Doe Defendants <u>no later than fourteen (14) days from the date this Order is docketed</u>.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment (ECF No. 60) and **GRANTS** Defendants' Motion for Partial Summary Judgment (ECF No. 55).   The Court also **DISMISSES** *sua sponte* the copyright infringement claim, Digital Millenium Copyright Act § 1201 claim, and Digital Millenium Copyright Act § 1202 claim as against Defendants Global Payments, Inc. and Heartland Payment Systems, LLC.   Plaintiffs **MAY FILE** a response in opposition the dismissal of Doe Defendants 1 through 229 <u>no later than fourteen (14) days from the date this Order is docketed</u>.   *If Plaintiffs do not file an opposition within the time provided, Does 1 through 229 will be dismissed from this action without further order of the Court pursuant to Rules 4(m) and 56(f).*

**IT IS SO ORDERED.**

Dated:   April 24, 2023

_____

Honorable Todd W. Robinson
United States District Judge

21-CV-1585 TWR (MSB)